UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MICHAEL MALOTT,

                    Plaintiff,                          Case No. 1:18-cv-62

v.                                                      Honorable Paul L. Maloney

LARRY WEAVER et al.,

                    Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the

Court is required to dismiss any prisoner action brought under federal law if the complaint is

frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary

relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C.

§ 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*,

404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly

irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these

standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against

Defendants Mackie, Smith, Ball, Sharp, Burgess, Thomas, Black, Plamondon, and Bomer.  The

Court also will dismiss Plaintiff's access-to-the-courts and due process claims against the

remaining Defendants.  The Court will serve Plaintiff's retaliation claims against Defendants

Weaver, Blow, and Carney.

## Discussion

### I.    Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan.  The events about which he complains, however, occurred at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan.  Plaintiff sues the following ECF Officials:  Assistant Resident Unit Supervisor Larry Weaver; Resident Unit Manager Jason Thomas; Administrative Assistant Eric Smith; Warden Thomas Mackie; Deputy Wardens Tim Ball and Rick Sharp; Correctional Officers (unknown) Blow and Derrick Carney; Prison Counselor (unknown) Black; Prison Librarians Amy Plamondon and (unknown) Bomer; and Business Office Manager Michael Burgess.

Plaintiff alleges that, beginning on October 27, 2016, and continuing through April 6, 2017, Defendants or their subordinates engaged in repeated actions to interfere with Plaintiff's access to the courts.  He also alleges that a number of these actions were taken in retaliation for Plaintiff being engaged in litigation against other prison officials, and he suggests that he was deprived of his right to due process.

Plaintiff alleges that, on October 27-28, 2016, and November 16, 18, 21, and 22, 2016, Defendant Weaver refused to process Plaintiff's legal mail to the courts and the attorney general's office in regard to pending litigation.  Defendant Weaver allegedly told Plaintiff that he was the boss and that nothing would be sent out if he did not want it sent.  On November 16, 2016, Defendants Weaver and Blow went into Plaintiff's cell and removed documents related to Plaintiff's litigation against other ECF employees and documents related to new litigation, together with ink, pens, blank envelopes, and stamped envelopes.  Defendants Blow and Weaver told

Plaintiff that he should not have filed a lawsuit against their friends and that they would see how well he could litigate without the items. (Compl., ECF No. 1, PageID.8.) On November 22, 2016, Defendant Thomas ordered Plaintiff's legal documents returned to him. However, 15 minutes later, Defendant Weaver re-confiscated the items, saying he did not care what Thomas said because he was in charge of the unit. Plaintiff complains that Defendants Mackie, Smith, Ball, and Sharp effectively authorized Weaver's conduct, because they did nothing in response to Plaintiff's complaints.

Plaintiff further alleges that, on numerous dates (December 22 and 26, 2017, and January 16, 18, and 24, 2017, February 6 and 9, 2017), Defendants Weaver, Plamondon, Bomer, Blow, Smith, Mackie, and/or Thomas either refused his requests for paper and envelopes or did not carry paper or envelopes in the prison store.

Next, Plaintiff complains that on November 17, 18, 23, and 28, 2016, December 1, 7, and 26, 2016, and January 2, 8, 18, and 23, 2017, Defendants Plamondon and Bomer denied Plaintiff's request to use the legal-writer program at ECF, which Plaintiff contends prevented him from accessing the courts to pursue his ongoing litigation. Plaintiff also contends that he was permitted by policy to use the legal-writer program, despite the fact that he was representing himself and serving as his own lawyer.

Plaintiff also contends that, on February 6, 2017, he confronted Defendants Plamondon and Bomer about not ever receiving the library items he requested, including the court rules, bar journals, and case law. They explained that the items were in great demand, as the prison had only one copy of the books for all four units of the prison. Plaintiff alleges that the limited copies of legal items denies him access to the courts.

Plaintiff alleges that Defendants Smith and Mackie put him on a paper restriction for 30 days on November 23, 2016. Plaintiff contends that the restriction was taken in retaliation for the filing of his lawsuit, that it was imposed without a misconduct charge, and that it denied Plaintiff access to the courts.

In addition, Plaintiff complains that Defendant Weaver refused to provide Plaintiff with a Class-III misconduct appeal form on November 22, November 29, and December 5, 2016. Plaintiff contends that Weaver thereby denied Plaintiff's right to due process. Plaintiff also alleges that he asked Defendant Ball to intervene with regard to the appeal form on December 13 and 19, 2016, but Defendant Ball took no action.

On November 30, 2016, Defendant Black allegedly denied Plaintiff a fair hearing on the Notice of Intent issued by Defendant Weaver for the property taken from Plaintiff. Plaintiff contends that Black thereby deprived Plaintiff of due process.

Plaintiff also alleges that, on December 12 and 19, 2016, Defendant Administrative Assistant Smith took no action to prevent the grievance coordinator from ignoring Plaintiff's requests. In addition, Plaintiff alleges that, on December 5 and 19, 2016, Defendant Warden Mackie took no action to require the grievance coordinator to provide Plaintiff grievance forms. Similarly, Plaintiff alleges that Defendant Deputy Wardens Ball and Sharp refused to stop the grievance coordinator from ignoring or denying Plaintiff's requests for grievance forms. Plaintiff contends that, because he could not get grievance forms, he was prevented from exhausting his administrative remedies and therefore from accessing the courts.

Plaintiff also argues that Defendant Burgess refused to remove a photocopy debt from Plaintiff's account on December 5 and 12, 2016, even after Defendant Black ordered the debt removed from the account.

Defendant Weaver allegedly denied Plaintiff access to the courts by not allowing him to have writing supplies on December 22 and December 26, 2016, and January 16, 2017. Defendants Weaver and Bomer also allegedly denied Plaintiff envelopes to mail his documents to the court on January 18, 2017, and February 9, 2017, again allegedly violating Plaintiff's right to access the courts.

Plaintiff alleges that, on January 24, 2017, Defendants Weaver, Mackie, Sharp, and Thomas denied him "the opportunity to get paper, envelopes and writing supplies to communicate to the courts," thereby depriving him of due process and the right to access the courts. (*Id.*, PageID.13.) He more specifically asserts that Weaver and Thomas would not allow him to submit a disbursement form for a blank envelope to write the court on that same date, but he does not allege what conduct Defendants Mackie and Sharp are alleged to have taken.

Plaintiff complains that Defendant Weaver delivered legal mail to Plaintiff on January 30, 2017, more than a month after it was mailed. When questioned, Weaver told Plaintiff that he was lucky to get the mail at all, as Weaver should have thrown it away. Plaintiff similarly complains that Defendant Blow gave him legal mail that was more than one-month old on February 2, 2017. Plaintiff asserts that the delays in legal mail deprived him of access to the courts.

On February 10, 2017, Plaintiff confronted Defendants Weaver, Thomas, Mackie, Sharp, and Ball to complain about writing paper not being available for purchase in the prisoner store, as required by policy. Defendants allegedly did not correct the problem that day, thereby purportedly depriving Plaintiff of his right of access the courts.

Plaintiff generally alleges that, on February 13, 2017, Defendants Weaver, Thomas, Mackie, and Sharp "allow[ed] legal documents and other papers to be removed from my cell and

to not be returned to me." (*Id.*, PageID.15.) Again, Plaintiff does not specify which, if any, of the four Defendants actually removed the papers from his cell.

Plaintiff contends that Defendants Blow and Weaver took his legal documents and personal items from his cell on February 24, 2017. At that time, Defendant Blow gave Defendant Weaver the grievances Plaintiff had written so that Weaver could throw them away. Plaintiff alleges that Blow and Weaver took his property to retaliate against Plaintiff for pursuing legal action. Defendant Weaver then gave Plaintiff a bunch of pills, saying that, if Plaintiff did not like what was happening, he could just take the pills and kill himself.

Plaintiff contends that, because of the interferences with his access to the courts, one of his cases was dismissed on a motion for summary judgment. *See Malott v. Haas et al.*, No. 1:16-cv-13014 (E.D. Mich. Apr. 5, 2017) (Order & J.) (adopting R&R entered Feb. 8, 2017). He also alleges that he was prevented from filing an appeal in another case in the Eastern District of Michigan. *See Malott v. Haas et al.*, No. 2:15-cv-14059 (Dec. 7, 2016) (Order & J. granting summary judgment for lack of exhaustion and rejecting claim of staff interference with grievances in late 2014).

Plaintiff next alleges that Defendant Carney came to Plaintiff's cell on April 26, 2017. After telling Plaintiff that Defendant Weaver had told Carney to remove Plaintiff's writing paper, Defendant Carney removed legal forms that Plaintiff claims he needed in order to send out unspecified expedited legal mail.

Plaintiff seeks injunctive relief, together with nominal, compensatory and punitive damages.

II.     <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Supervisory Liability

Plaintiff claims that Defendants Warden Mackie, Deputy Wardens Ball and Sharp, and Administrative Assistant Smith failed to prevent or cure the grievance coordinator's interference with the grievance process. He also alleges that Defendants Mackie, Ball, Sharp, and Thomas are responsible for Defendant Weaver's re-confiscation of Plaintiff's legal property, both because they had supervisory control over Weaver and did not prevent the taking and because they did not respond to Plaintiff's complaints about Weaver. Further, Plaintiff alleges that Defendant Ball failed to ensure that Defendant Weaver provided a misconduct appeal form to Plaintiff

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff has failed to allege that Defendants Mackie, Ball, Sharp, and Smith engaged in any active unconstitutional behavior in relation to the handling of Plaintiff's grievances, the taking of his property, or the provision of an appeal form. Accordingly, he fails to state a claim against them on those bases. In the alternative, as will be discussed *infra*, even if Plaintiff had alleged active conduct by these Defendants, Plaintiff's allegations fail to state a claim against any Defendant for denial of access to the courts and denial of due process, and they fail to state a claim of retaliation against these Defendants.

## B.    Denial of Access to Courts

Plaintiff raises a variety of claims concerning his denial of access to the courts. Plaintiff argues that on six dates between October 27 and November 22, 2016, Defendant Weaver refused to process his legal mail to the courts and the attorney general's office. He also alleges that, on numerous dates (November 14, 16, 18, 21, and 22, 2016, December 22 and 26, 2016, and January 16, 18, and 24, 2017, February 6 and 9, 2017), Defendants Weaver, Plamondon, Bomer, Blow, Smith, Mackie, and/or Thomas either refused his requests for paper and envelopes, took his paper, pens and envelopes, or did not carry paper or envelopes in the prison store. In addition, Plaintiff alleges that Defendants Mackie, Sharp, and Ball failed to ensure that he received such items. He contends that Defendants Mackie and Smith placed him on paper restriction for 30 days on November 23, 2016. Plaintiff further alleges that Defendants Plamondon and Bomer refused to allow him to participate in the legal-writer program at ECF and failed to maintain adequate copies of legal reference materials in the library. Moreover, he contends that Defendants Smith and Mackie placed him on a paper restriction for 30 days from November 23, 2016. He also asserts that Weaver, Blow, and Carney took legal materials from his cell, which prevented him from making necessary legal responses. As a result of all of these interferences, Plaintiff contends that

one of his cases was dismissed and he was unable to file an appeal in another case. Finally, Plaintiff alleges that Defendants Mackie, Ball, Sharp, and Smith all denied him access to the courts when they failed to ensure that the grievance coordinator processed Plaintiff's grievances and requests for grievance forms, thereby preventing Plaintiff from exhausting his administrative remedies.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions

> to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

1.     Defendant Weaver's refusals to process legal mail

Plaintiff alleges that Defendant Weaver refused to process his legal mail on October 27-28, 2016, and November 16, 18, 21, and 22, 2016. Plaintiff does not indicate what he was attempting to mail on those dates, but he suggests that he was unable to file an appeal in *Malott v. Haas et al.*, No. 2:15-cv-14059 (E.D. Mich.), and was unable to respond to a motion for summary judgment that resulted in the dismissal of his case in *Malott v. Haas et al.*, No. 1:16-cv-13014 (E.D. Mich.).

Plaintiff's allegations are woefully inadequate to demonstrate that he suffered actual injury resulting from Weaver's refusal to process his legal mail on the listed six dates. First, Plaintiff utterly fails to allege that he attempted to file an appeal in Case No. 2:15-cv-14059.

11

Moreover, the order and judgment dismissing the case was not issued until December 7, 2016, after the dates on which Weaver allegedly refused to mail an item.

Second, Plaintiff fails to allege that he attempted to file a document in Case No. 1:16-cv-13014 during the time that Weaver allegedly failed to process his legal mail.  Indeed, the motion for summary judgment leading to the dismissal on April 5, 2017, was not even filed until December 12, 2016.  Thus, Defendant Weaver's refusals to process legal mail between October 27 and November 22, 2016, could not have caused actual injury in Case No. 1:16-cv-13014.

As a consequence, Plaintiff fails to allege actual injury sufficient to support an access-to-the-courts claim based on Defendant Weaver's refusals to process legal mail in October and November 2016.

## 2.    Denials or taking of writing materials and envelopes

Plaintiff contends that Defendants Weaver, Blow, and Carney took his legal papers and writing materials on November 22, 2016, February 13, 2017, February 24, 2017, and April 26, 2017.  When the items were ordered returned on November 22, 2016, Defendant Weaver allegedly re-confiscated them.  Plaintiff further alleges that, on numerous dates (December 22 and 26, 2016, and January 16, 18, and 24, 2017, February 6 and 9, 2017), Defendants Weaver, Plamondon, Bomer, Blow, Smith, Mackie, and/or Thomas either refused his requests for paper and envelopes or did not carry paper or envelopes in the prison store. Plaintiff asserts that Defendants' actions violated his right of access to the courts.

Plaintiff's allegation that he was denied his right to access the courts by the taking of his materials is wholly conclusory.  Plaintiff does not indicate how the missing materials caused actual injury to any nonfrivolous criminal, habeas, or civil-rights case.  *Lewis*, 518 U.S. at 353; *Thaddeus-X*, 175 F.3d at 391.  Moreover, Plaintiff fails to show that the removal of items from

Plaintiff's possession in November 2016 prevented him from filing an appeal of a judgment entered on December 7, 2016. Plaintiff even more clearly fails to show any connection between the alleged deprivation and the dismissal of his civil rights action, which did not occur until April 5, 2017.

In addition, the only dates on which Defendants Weaver, Plamondon, Bomer, Blow, Smith, Mackie, and/or Thomas denied his requests for writing materials that could have been relevant to his ability to file an appeal of the dismissal of his case in *Malott v. Haas et al.*, No. 2:15-cv-14059 (E.D. Mich.), were December 22 and 26, 2016. All of the other dates of denials either preceded the December 7, 2016, dismissal or occurred after the 30-day time period for filing an appeal had already passed. *See* FED. R. APP. P. 4(a)(1)(A) (establishing time for filing an appeal in a civil action at 30 days after entry of the judgment appealed).

Further, the Court notes that Plaintiff Malott's allegations that he lacked writing materials are at odds with his history of filings in this Court. Plaintiff proved himself able to send a letter and a proof of service to the Court in *Malott v. Mackie et al.*, No. 1:15-cv-1148 (W.D. Mich.), in the days following the alleged removal of his materials. (1:15-cv-1148, ECF Nos. 68-69, PageID.381-386 (dated November 21, 2016).) Similarly, in *Malott v. Hill et al.*, No. 1:15-cv-1092 (W.D. Mich.), Plaintiff proved able to mail both a motion and a letter on that same date. (1:15-cv-1092, ECF Nos. 69-70, PageID.245-248.) As a consequence, his own litigation history demonstrates that, regardless of the alleged conduct of Weaver and Blow, Plaintiff was never without the wherewithal to access the courts.[1] For the same reasons, Plaintiff's claims that

---

[1] The Court notes that Plaintiff has a history of alleging staff interference with his ability to litigate. In *Malott v. Haas et al.*, No. 2:15-cv-14059 (E.D. Mich.), in granting summary judgment, the trial court rejected Plaintiff's conclusory claims that staff had refused to sharpen his pencil, to provide a grievance form, and to provide Plaintiff with paper, pens, envelopes, and stamps. (2:15-cv-14059, ECF No. 26, PageID.200 (noting Plaintiff's prior dishonesty); *see also Malott v. Crompton*, No. 1:16-cv-1007 (W.D. Mich. Nov. 11, 2016) (rejecting Plaintiff's allegations of mistaken filings as "patently incredible") (ECF No. 24, PageID.136.)).

Defendants Mackie, Sharp, and Ball failed to ensure that he received such items did not deny him access to the courts.

### 3. Placement on paper restriction

Plaintiff alleges that Defendants Mackie and Smith placed him on a paper restriction for 30 days on November 23, 2016. He alleges that the restriction prevented him from accessing the courts.

Assuming that Plaintiff had no access to paper for 30 days, from November 23 to December 23, 2016, the deprivation arguably could have slowed Plaintiff's ability to file an appeal from the dismissal of his civil action in *Malott v. Haas et al.*, No. 2:15-cv-14059 (E.D. Mich. Dec. 7, 2016). However, even if his ability to file a notice of appeal was delayed for a part of the appeal period (between December 7 and December 23, 2016), Plaintiff had until January 6, 2017, in which to file his notice of appeal, and he subsequently could have sought an extension of time to file the appeal. *See* FED. R. APP. P. 4(a)(1)(A) (establishing time for filing an appeal in a civil action at 30 days after entry of the judgment appealed); FED. R. APP. P. 4(a)(5). Under these circumstances, Plaintiff's allegations are insufficient to show that the paper restriction itself could have affected the timeliness of the notice of appeal. Moreover, Plaintiff alleges only one additional day within the appeal period on which some Defendant purportedly denied his request for writing materials: December 26, 2016. Taken together, the alleged interference with writing materials could not have prevented Plaintiff from filing an appeal from the dismissal of his action. Plaintiff therefore fails to allege facts demonstrating actual injury.

### 4. Denials of requests to participate in legal-writer program

Plaintiff alleges that Defendants Plamondon and Bomer denied his requests to participate in the legal-writer program on November 17, 18, 23, and 28, 2016, December 1, 7, and

26, 2016, and January 2, 8, 18, and 23, 2017. Plaintiff alleges that he was denied his right of access to the courts to pursue his ongoing litigation.

Plaintiff's allegations again are wholly conclusory. Plaintiff has been an active litigant in this Court and in the Eastern District of Michigan during the period in question, with at least four actions pending during the time period. *See Malott v. Mackie et al.*, No. 1:15-cv-1148 (W.D. Mich.); *Malott v. Hill et al.*, No. 1:15-cv-1092 (W.D. Mich.); *Malott v. Haas et al.*, No. 1:16-cv-13014 (E.D. Mich.); *Malott v. Haas et al.*, No. 2:15-cv-14059 (E.D. Mich.). He routinely drafts and files his own cases and motions. He provides absolutely no support for his allegation that he required the services of the legal-writer program to pursue his claims. Plaintiff therefore fails to allege that Defendants Plamondon and Bomer denied him his right to access the courts by denying his requests to participate in the legal-writer program.

5.      Failure to keep adequate copies of legal reference materials

Plaintiff next alleges that Defendants Plamondon and Bomer failed to keep in the prison law library adequate copies of court rules, cases, bar journals, and other legal materials. He alleges that he routinely was unable to receive requested materials, because they were being used by other prisoners. He contends that the inadequacies of the law library denied him his right to access the courts.

Plaintiff's claim is conclusory and fails to indicate what materials he required and how the lack of materials caused him actual injury. Conclusory allegations are insufficient to state a claim. *Iqbal*, 556 U.S. at 678. Plaintiff therefore fails to state an access-to-the-courts claim against Defendants Plamandon and Bomer.

### 6. Failures related to grievances

Plaintiff alleges that Defendants Mackie, Ball, Sharp, and Smith all failed to prevent the grievance coordinator from either refusing to process Plaintiff's grievances or providing Plaintiff with grievance forms. Plaintiff contends that, because he was unable to pursue the grievance process properly, he was unable to exhaust his claims. He therefore contends that he was deprived of his right to access the courts.

Even if Plaintiff was improperly prevented from filing a grievance or from pursuing his grievance at all levels, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. *See, e.g.*, *Lewis*, 518 U.S. at 355 (1996) (requiring actual injury); *Bounds*, 430 U.S. at 821-24 (1977). The exhaustion requirement only mandates exhaustion of available administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff was improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable access-to-the-courts claim against any Defendant for interference with his grievances.

### C.    Due Process

Plaintiff alleges that various defendants interfered with his rights to due process in appealing from misconduct charges. He contends that Defendant Weaver refused to provide him with a Class-III misconduct appeal form on November 22 and 29, 2016, and December 5, 2016.

He argues that Defendant Ball did not take action on Plaintiff's December 13 and 19, 2016, requests to require Weaver to provide the forms. Plaintiff also alleges that Defendants Weaver and Blow removed his property without due process and that Weaver re-confiscated the property after it had been returned. In addition, Plaintiff complains that, on November 30, 2016, Defendant Black denied Plaintiff a fair hearing on Weaver's notice of intent to take Plaintiff's property. Further, Plaintiff alleges that he was denied due process when Defendants Smith, Mackie, Ball, and Sharp failed to stop the grievance coordinator from ignoring Plaintiff's grievances and requests for grievance forms. Moreover, Plaintiff alleges that Defendant Burgess refused on December 5 and December 12, 2016, to remove a large debt for photocopies from Plaintiff's account, despite Defendant Black having ordered the debt removed. Finally, Plaintiff suggests that he was denied his right under prison policy to participate in the legal-writer program, presumably in violation of Plaintiff's right to procedural and/or substantive due process.

### 1.     Class-III misconduct

Plaintiff complains that Defendant Weaver refused to give him a form to appeal his Class-III misconduct determination. He also argues that Defendant Ball did not act to make Defendant Weaver provide the form.

A prisoner's right to due process in relation to misconduct proceedings depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor"

misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. (*See* Policy Directive 03.03.105, ¶ AAAA). Therefore, Plaintiff could not have been denied good time or disciplinary credits as a result of his Class III misconduct conviction. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, fails to state a due process claim arising from his Class III misconduct conviction.

### 2. Taking of property / refusing to remove debt

Plaintiff arguably alleges three claims related to the inadequacies of the process he received in relation to the taking of his property. First, he suggests that Defendants Blow, Weaver, and Carney on various occasions confiscated his property without due process of law. Second, he alleges that Defendant Black did not provide him a fair hearing on Weaver's notice of intent to deprive Plaintiff of the property confiscated from Plaintiff's cell. Third, he suggests that Defendant Burgess effectively deprived him of his property without due process when Burgess refused to remove a photocopy debt from Plaintiff's prison trust account.

All of Plaintiff's due process claims concerning his property are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although

real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claims are premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not and cannot sustain his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. In a number of cases similar to this one, the Sixth Circuit has affirmed dismissal where the inmate failed to allege and show that state law post-deprivation remedies were inadequate. *Id.* at 479-80 (money wrongly removed from prison account); *Lillie v. McGraw*, No. 97-3359, 1997 WL 778050, at *1 (6th Cir. Dec. 12, 1997) (officials allegedly broke television); *Mowatt v. Miller*, No. 92-1204, 1993

WL 27460, at *1 (6th Cir. Feb. 5, 1993) (misapplication of money to a deficit in prison account); *Shabazz v. Lecureux*, No. 85-2014, 1986 WL 16140, at *1 (6th Cir. Dec. 5, 1986) (illegal appropriation of money from prisoner account). Accordingly, the Court will dismiss Plaintiff's due process claims related to the taking of his property.

3.      Denials of access to the grievance process

Plaintiff complains that various Defendants Smith, Mackie, Ball, and Sharp failed to prevent the grievance coordinator from interfering with Plaintiff's grievances and from refusing to provide Plaintiff with grievance forms.

Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance procedure, Defendants' conduct did not deprive him of due process.

4. Right under policy to participate in legal-writer program

Plaintiff appears to contend that he had a right under prison policy to participate in the legal-writer program. He suggests that Defendants Plamondon and Bomer deprived him of this right, in violation of prison policy and the Due Process Clause.

Defendant's alleged failure to comply with a state administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, to the extent that Plaintiff suggests that he was deprived of due process by the failure to comply with prison policy, Plaintiff utterly fails to allege facts demonstrating that the denial of his access to the legal-writer program either affects the duration of his sentence or imposes an atypical and significant hardship relative to ordinary prison confinement. *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). He therefore has no liberty interest in the legal-writer program. Consequently, he fails to demonstrate that he was entitled to procedural due process before being denied placement in the program.

Plaintiff also cannot demonstrate that denial of access to the program violated his right to substantive due process. "Substantive due process prevents the government from engaging

in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002). "Substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the "decencies of civilized conduct."'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952))). The Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *see also Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007).

"Where a particular [a]mendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that [a]mendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, there is a specific constitutional amendment that applies to Plaintiff's claim concerning the legal-writer program. Plaintiff's right to participate in the program is governed by whether he requires access in order to vitiate his First Amendment right of access to the courts. *See Bounds*, 430 U.S. at 821; *Lewis*, 518 U.S. at 351-53. He therefore cannot demonstrate a substantive due process violation.

In sum, therefore, Plaintiff's allegations concerning his inability to access the legal-writer program fail to state either a procedural due process or substantive due process claim.

### D. Retaliation

Plaintiff contends that Defendants Weaver and Blow on two occasions removed legal documents and writing materials from his cell in retaliation for the lawsuits Plaintiff had filed against other prison officials. In addition, Plaintiff argues that Defendants Smith and Mackie imposed a paper restriction on Plaintiff on November 23, 2016, in retaliation for the filing of a lawsuit. Plaintiff also alleges that Defendants Weaver and Blow delayed delivering his legal mail in retaliation for Plaintiff's litigation activities. Finally, Plaintiff arguably suggests that Defendant Carney retaliated against him, when Carney, at the instruction of Defendant Weaver, removed Plaintiff's writing paper and legal forms to retaliate against Plaintiff for filing lawsuits.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's

alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). The filing of a nonfrivolous lawsuit unquestionably constitutes protected conduct for which a prisoner cannot be subjected to retaliation. *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002).

Plaintiff's allegations that Defendants Weaver, Blow, and Carney confiscated and/or kept his legal materials and other property and/or interfered with his mail are sufficient to rise to the level of adverse action. *See Bell*, 308 F.3d at 606 (citing *Walker v. Bain*, 257 F.3d 660, 664 (6th Cir. 2001)). Further, given Plaintiff's allegations that Defendants Weaver and Blow verbally expressed the reasons for their confiscation and further given that Defendant Carney appears to understand the reason Defendant Weaver had ordered him to remove the materials, Plaintiff has sufficiently alleged the third element of a retaliation claim against Defendants Weaver, Blow, and Carney.

However, Plaintiff's allegation that Defendants Smith and Mackie placed him on paper restriction in retaliation for filing his lawsuit is wholly conclusory. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Plaintiff merely alleges the ultimate fact of retaliation with respect to Defendants Smith and Mackie. He has not presented any facts to support his conclusion that the actions of Defendants Smith and Mackie were motivated by his filing of a lawsuit against other, unnamed officers. Accordingly, Plaintiff's speculative allegation against Defendants Smith and Mackie fails to state a claim.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Mackie, Smith, Ball, Sharp, Burgess, Thomas, Black, Plamondon, and Bomer will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Weaver, Blow, and Carney.

An Order consistent with this Opinion will be entered.


Dated:   March 16, 2018                          /s/ Paul L. Maloney
                                                 Paul L. Maloney
                                                 United States District Judge